976 F.2d 738
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
TCI CABLEVISION OF OREGON, INC., Plaintiff-Appellee,
v.
DURNELL ENGINEERING, INC., Defendant-Appellant.
TCI CABLEVISION OF OREGON, INC., Plaintiff-Appellant,
v.
DURNELL ENGINEERING, INC., Defendant-Appellee.
 Nos. 91-35498, 91-35499.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 16, 1992.
Decided Sept. 21, 1992.
 
 Before BEEZER, NOONAN and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Elizabeth E. Branch sued Durnell Engineering, Inc. (Durnell) for negligently causing the death of her husband. Her case was consolidated with that of TCI Cablevision of Oregon, Inc. (TCI) against Durnell for contribution from Durnell to a settlement made by TCI of claims arising out of the same accident. From judgments in favor of Branch and TCI, Durnell appeals. TCI cross-appeals a court-ordered reduction of the contribution due from Durnell.
 
 
 3
 We affirm the district court in all respects.
 
 FACTS
 
 4
 Durnell manufactured aerial lifts for use by cable television installers. TCI had two such lifts installed by Durnell's Portland dealer on two Ford vans in 1979. In 1985 these vans were taken out of service and replaced by two Chevrolet vans. Durnell's Portland dealer removed the lifts from the Fords and installed them in the Chevrolets.
 
 
 5
 The lifts were installed by attaching the main body of the lift mechanism to the floor of the vans. The arm and bucket portions rose from the roof and protruded above the vans. The lifts raised the center of gravity of the vans, as TCI was aware. No warning as to the safety of the situation was given TCI by Durnell, nor did Durnell conduct any experiments as to the safety of a van with a lift installed.
 
 
 6
 On the afternoon of May 20, 1987, Robert Branch, a journeyman lineman for TCI, was headed east on Main Street, Springfield, Oregon, driving one of the Chevrolet vans. He was traveling at about 45 miles per hour when he made a sudden emergency swerve to avoid a slower-moving vehicle in front of him. The van flipped over and slid across the adjoining lanes into the middle of westbound traffic where it was struck by a vehicle operated by Kenneth Bennett. The occupants of the Bennett vehicle were injured, Branch was killed.
 
 PROCEEDINGS
 
 7
 In a state court action, TCI suffered a judgment against it of $363,608 in favor of Kenneth Bennett. TCI settled the claims of Bennett's three passengers for $45,000 in return for their releasing TCI and its agents from liability. In the present case TCI sought indemnity or contribution from Durnell for these amounts.
 
 
 8
 TCI alleged negligence by Durnell in "specifying the installation of model NV-30 lift on a Chevrolet G30 Van. Durnell knew or should have known that the lift would greatly increase the rollover potential of the van." TCI also alleged that a substantial cause of the accident was Durnell's negligence in not providing a warning that the installation of the lift "in accordance with Durnell's specifications would result in the van being much more susceptible to rollover." In a separate count TCI alleged that Durnell should be strictly liable as the manufacturer and seller of the lift.
 
 
 9
 Elizabeth E. Branch, the widow of Robert Branch, brought suit against Durnell on the same theories of negligence and strict liability. Branch and TCI moved jointly to consolidate their cases. Durnell objected. The trial magistrate granted the motion to consolidate.
 
 
 10
 The jury returned a verdict for the plaintiffs. In answer to interrogatories, the jury found Durnell negligent. But the jury found for Durnell on the strict liability count, answering that the van and lift combination was not "in a defective condition that was unreasonably dangerous to the user." The jury found that both Robert Branch and TCI were 50 percent negligent. In accordance with this verdict the total damages were reduced 50 percent by the court. In addition, the court ruled that TCI had no right to contribution for the $45,000 it spent obtaining releases from Bennett's three passengers, as the releases applied only to it and not to Durnell.
 
 
 11
 Durnell appeals the judgment in favor of Branch and TCI. TCI appeals the $45,000 reduction of the judgment in its favor.
 
 ANALYSIS
 Durnell's Negligence
 
 12
 On appeal, Durnell makes two points. First, it argues that there was no evidence that its failure to warn TCI was the cause of the accident. If the danger was as apparent to TCI, as it should have been to the manufacturer, there can be no liability. Fuhrer v. Gearhart by the Sea, Inc., 306 Or. 434, 439, 760 P.2d 874, 878. (1988). In the abstract, the point seems well taken. The mechanics who worked for TCI would have perceived as well or almost as well as the technicians that worked for Durnell that a change in the center of gravity of the van would present hazards in driving.
 
 
 13
 However, since the jury returned a general verdict in favor of the plaintiffs, we must view the evidence in the light most favorable to them. Donoghue v. Orange County, 848 F.2d 926, 932 (9th Cir.1987). The jury heard testimony that TCI would not have purchased the lifts if Durnell had warned TCI of the increased danger of rollover. There was also testimony which would have allowed the jury to infer that Durnell should have warned its customers to reduce the danger by adding counterweights to the bottom of the van. On this evidence, we cannot say that reasonable persons could not conclude that Durnell was negligent in failing to warn TCI.
 
 
 14
 Moreover, Branch and TCI put their claim of negligence not only in terms of failure to warn but in terms of the creation of an unreasonable danger by Durnell specifying the installation of the model NV-30 on a Chevrolet G30 van. The jury could have proceeded on either basis to find for the plaintiffs.
 
 
 15
 Here Durnell makes its second point; this allegation of negligence is virtually the same as the plaintiffs' second theory of liability, that Durnell should be held to strict liability as the manufacturer. On this theory the jury found for the defendant. Durnell contends that by rejecting strict liability the jury must also have rejected the theory that made Durnell liable for its specifications. That is by no means evident. The jury could have rejected strict liability simply by finding that the van and lift combination were not in a defective condition. But doing so would not have prevented the jurors from also finding that Durnell was negligent in specifying the installation of the lift on the van, given the tendency of the van-lift combination to roll over in an emergency maneuver.
 
 
 16
 In any case, Durnell did not request an answer from the jury as to what theory of negligence it based its award upon. "We will not allow litigants to play procedural brinkmanship with the jury system and take advantage of uncertainties they could well have avoided." McCord v. MaGuire, 873 F.2d 1271, 1274 (9th Cir.1989), amended, 885 F.2d 650 (9th Cir.1989).
 
 The Consolidation of the Cases
 
 17
 Durnell contends that the consolidation of the cases was unfair because it gave TCI the emotional benefit of being on the same side as a widow suing for the death of her husband. There is some color to Durnell's contentions. However, it was within the discretion of the trial court to make the consolidation when the identical issues of negligence, arising out of the same accident, were to be litigated. Fed.R.Civ.P. 42(a). In making its decision, the trial court exhibited an awareness of the competing considerations involved. During trial, the court took steps to avoid possible prejudice to Durnell. There was no abuse of discretion.
 
 
 18
 TCI's Claim For Contribution For the Passengers' Releases
 
 
 19
 Oregon law provides: "A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement ..." ORS 18.440(3). The releases that TCI obtained from the passengers discharged only TCI and no one else from liability. TCI argues that parol evidence should be admitted as to the extent of the releases. But there are no ambiguous terms to be construed by parol evidence. The releases ran only to TCI and its agents. It is true that the passengers did not thereafter sue Durnell. In essence, TCI is arguing that the failure of the passengers to sue Durnell must mean that the agreement was intended to release Durnell from liability. But there are other explanations for why the passengers failed to bring suit. Their inactivity cannot affect the application of the statute to prevent TCI from recovering from Durnell.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3